IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESLEY B. MAYES, | § | |
| TDCJ #1274331, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3586 |
| | § | |
| B. TAYLOR, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Wesley B. Mayes, an inmate of the Texas Department of Criminal Justice, has filed a civil rights complaint against government defendants including Harris County Sheriff’s Deputies B.J. Taylor and Bilsen Espinosa in their individual capacities. The court reviewed the pleadings and dismissed all claims except those against Taylor and Espinsosa regarding an alleged use of excessive force. The defendants have been served and have filed a Motion for Summary Judgment (Docket Entry No. 49), which is supported by records and sworn statements. After reviewing the pleadings and evidence along with the plaintiff’s response, the court will grant the defendants’ motion and dismiss this action for the reasons set forth below.

## I. Claims and Allegations

Mayes claims that the defendants used excessive force against him when he was arrested on June 1, 2004. Mayes alleges that Taylor and Espinosa injured him when they struck his vehicle with their vehicles during a highspeed chase. According to Mayes, all three parties were driving at excessive speeds when another deputy blocked his path. Mayes asserts that he was coming to a stop when both Taylor and Espinosa deliberately struck Mayes from the rear and caused him to suffer a back injury.

Mayes was initially taken to a police substation, but he was then moved to LBJ hospital in response to his complaints about his back. The treating physician prescribed non-steroid inflammatory drugs, Ibuprofen, Indomethacin, and Eliville. Mayes claims that he still experiences back pain as a result of the collision. He seeks monetary compensation for his pain and suffering.

## II. Summary of the Defendants' Arguments and Evidence

The defendants argue (1) that the evidence does not support the claims made against them and (2) that they are entitled to qualified immunity. With regard to their argument concerning the evidence, the defendants contend that they were not at fault and that it was Mayes who was responsible for creating the danger both to himself and others, including the defendants. They assert that the evidence shows that Mayes had stolen the car he was driving and

that defendants' sole objective was to get the speeding and evasive vehicle off the road. Moreover, they contend that it was Mayes who rammed his car into them and not the other way around.

In support of their arguments defendants have attached the following exhibits to the Motion for Summary Judgment (Docket Entry No. 49):

Exhibit A: Affidavit of B.J. Taylor

Exhibit B: Affidavit of William Gray

Exhibit C: Indictments

Exhibit D: Complaint, Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confessions

Exhibit E: Affidavit of Bilsen A. Espinosa

Exhibit F: Affidavit of Daniel McCool

The evidence shows that on June 1, 2004, Deputy Taylor was on duty in a marked patrol car when he responded to a report of a disturbance at the South Grand Luxury Apartments located at 15430 East Freeway in the Channel View area of Harris County, Texas. (Exhibit A, Affidavit of B.J. Taylor, at page 2) When Taylor arrived he spoke to the wheelchair-bound complainant who reported that a black male had threatened her when she refused to give him money to buy drugs. Id. She told Taylor that the suspect had gone north on Dell Dale, a street near the East Freeway. Taylor proceeded to a gas station located at 222 Dell Dale and observed a black male fitting the description given by the wheelchair-bound

woman, apparently committing a carjacking. Id. The suspect was sitting inside a green Mustang and fighting with a Hispanic male and female who were outside of the vehicle. Id. As Taylor drove into the station's parking lot, the couple began pointing at the Mustang and screaming that a robbery was occurring. Id. Taylor, observing the Mustang's license plate number, tried to stop the vehicle by using his emergency lights and siren. However, the Mustang sped off with Taylor in pursuit. Id. Both cars entered the freeway and accelerated up to 115 miles per hour despite the presence of other traffic. Id. at 3. The suspect, who was later identified as Wesley Mayes, tried to evade arrest by weaving in and out of traffic and driving on the shoulder of the highway. Id. at 3-4. Although Mayes ran stop lights and turned off his own lights, Taylor managed to keep him in sight. Id.

Taylor radioed the dispatcher who in turn advised other law enforcement officers about the pursuit. (Exhibit B, Affidavit of Lieutenant William Gray, at page 2) Several other officers, including Lieutenant William Gray and Deputy Bilson Espinosa, joined in the chase. (Id.; Exhibit E, Affidavit of Deputy Bilson Espinosa, at page 2) The officers managed to cut off Mayes during the pursuit; however, Mayes responded by ramming into two of the law enforcement officers' vehicles instead of surrendering to them. Id. Mayes first struck Taylor's car and later rammed into Espinosa's car. (Exhibit A at 3) From the officers' point of

view, Mayes intended to collide with the Sheriff's Department vehicles in order to facilitate his escape. (See Exhibit F, Affidavit of Deputy Daniel McCool, at page 3; "The collision appeared to be very deliberate and then the Mustang accelerated at a very fast speed.")

The chase continued through Houston and headed south on State Highway 288 into Brazoria County. Id. Other units joined in the pursuit, and it ended only after Department of Public Safety troopers deployed a spike strip, which blew out the Mustang's front two tires near 288 and Highway 35 in Brazoria County. (Exhibit A at 4; Exhibit B at 3) Mayes was arrested and subsequently charged with felony theft, felony evading arrest, and two counts of aggravated assault on a police officer. (Id.; Exhibit C, Indictments) Mayes ultimately entered a judicial confession pursuant to a plea bargain regarding the theft charge, which was enhanced by four prior convictions. (Exhibit D, Complaint, Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confessions) The trial court found Mayes guilty and sentenced him to five years in prison. Id.

Defendants contend that their actions were reasonable in light of the circumstances they faced and considering the split-second decisions they were forced to make. Defendants also contend that they are entitled to qualified immunity if any use of force is found to be unnecessary. The court concludes that both of defendants' arguments have merit.

## III. Summary Judgment Standards

In deciding a motion for summary judgment, the court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. Id.

The court construes the evidence in favor of the nonmoving party and does not weigh the evidence, assess its probative value, or resolve any factual disputes. Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or

"unsubstantiated assertions" to establish that there is a triable issue. Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. Fiesel v. Cherry, 294 F.3d 664, 667 (5th Cir. 2002); Spectators' Communication Network Inc. v. Colonial Country Club, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir. 1998), citing Little, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. Id.

## IV. Analysis

Defendants contend that they are entitled to qualified immunity and that the evidence does not support any claim against them. (Docket Entry No. 49 at 12) A claim that law enforcement officials used excessive force during events relating to an arrest is reviewed under the Constitution's Fourth Amendment. Graham v. Connor, 109 S.Ct. 1865, 1871 (1989). Such claims are analyzed under the "objective reasonableness" test rather than under a substantive due process standard. Id. In order for Mayes to establish his claim that the Harris County Sheriff's Deputies used

excessive force against him during the arrest he must prove that he "(1) suffered some injury, which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." Heitschmidt v. City of Houston, 161 F.3d 834, 839 (5th Cir. 1998), citing Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). When determining whether the use of force was excessive courts are mindful that police officers are often faced with difficult situations that demand split-second decisions. Graham, 109 S.Ct. at 1872. Consequently, the court will view the circumstances through the eyes of the officers at the scene and will not substitute its own hindsight in determining whether the defendants' acts were reasonable. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). The force the defendants used against Mayes will be considered in context of the problem the defendants were facing when they used the force. Ikerd, 101 F.3d at 434.

Mayes has filed a response (Docket Entry No. 56) in which he disputes the defendants' version of events. He contends that there is no proof that he threatened the person in the wheelchair and that there is no evidence that he used force to take the car. He reiterates his claim that the defendants caused the collisions and points out that the aggravated assault on a peace officer charges

against him were dismissed. He also presents medical records supporting his allegation that his back was injured as a result of the collisions.

It is undisputed that Mayes was driving a car that he was not authorized to drive and that the parties were engaged in a highspeed chase when the collisions occurred. It is also accepted that Mayes did suffer some injury as a result of the collisions. What is not entirely clear is who hit whom and what were the intentions of Taylor and Espinosa.

When a law enforcement official observes a suspect flee from the scene of a crime he must weigh the need to enforce order and prevent further harm being committed by the alleged lawbreaker against the need to protect those who might become involved in an incident from unnecessary risks regardless of whether they are suspects, their passengers, bystanders, or other potential parties. County of Sacramento v. Lewis, 118 S.Ct. 1708, 1720 (1998). Under such circumstances an officer must rely on split-second judgment and will not be held liable unless it is shown that he intended to harm the suspect. Id. citing Graham, 109 S.Ct. at 1872 ("Police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving."). It has long been recognized that a demonstration or use of force may be necessary to stop and control a suspect. Graham at 1872, citing Terry v. Ohio, 88 S.Ct. 1868, 1880-83 (1968).

Mayes can only prevail against the deputies if he can show that they used tactics or maneuvers that were clearly intended to cause him bodily harm regardless of his willingness to submit himself to their authority if faced with no alternative. See Brower v. County of Inyo, 109 S.Ct. 1378 (1989). In Brower the Supreme Court found that the plaintiffs, heirs of a decedent killed by a police roadblock, had alleged an unreasonable seizure by asserting that police caused an eighteen-wheel truck to be parked on a highway blocking both lanes. The roadblock was effectively hidden because it was placed behind a curve in an unilluminated area. Id. at 1380. Moreover, the police in Brower virtually assured that the decedent would collide with the truck by positioning a police car, with its headlights blazing, between the truck and the decedent's vehicle. Id. As a result of the defendants' carefully planned trap, the decedent was blinded by the headlights as he sped around the curve. Under these facts the Court found that the defendants had acted unreasonably because the decedent had no opportunity to stop voluntarily before hitting the roadblock. Id. at 1383. In the present action Taylor and Espinsosa have presented evidence showing that they did not engage in any conduct comparable to the actions in Brower. Moreover, they have shown that Mayes initiated the dangerous activity by fleeing from the scene of a crime and by driving at high speeds.

In addition to implicating Mayes as the instigator of the collisions, defendants have presented evidence showing that the collisions happened during a rapid pursuit involving numerous vehicles. At most Mayes has presented only his statement that the defendants deliberately hit him. Apart from Mayes' unsupported statement, there is no evidence indicating that defendants intended to ram Mayes' car. Bare assertions will not defeat the defendants' Motion for Summary Judgment. Wallace, 80 F.3d at 1046-47, citing Little, 37 F.3d at 1075. Moreover, Mayes created the dangerous situation by speeding off with a stolen vehicle to avoid apprehension by defendants, whom he clearly knew were law enforcement officers. Mayes chose to drive through traffic at high speeds that placed him, the deputies, and other drivers at peril. The deputies, whose duty was to maintain order and safety, were faced with a lawbreaker who was a menace on the highway. They responded in a manner that is understandable and reasonable in light of their predicament. The defendants' actions were not unconscionable to the extent that they could be considered in violation of Mayes' rights under the Constitution. Lewis, 118 S.Ct. at 1721. Therefore, defendants cannot be held liable under § 1983, and Mayes is not entitled to relief. Id.

## V. **Plaintiff's Motions**

Mayes has filed a Motion for Appointment of Counsel (Docket Entry No. 28). He states that he is unable to afford counsel and

has requested leave to proceed in forma pauperis. Mayes asserts that his imprisonment will greatly limit his ability to litigate. He also states that the issues in the case are complex requiring significant research and investigation and that he has limited access to the prison law library and limited knowledge of the law. Mayes contends that if this action goes to trial, he will need an attorney to present evidence and cross-examine witnesses.

In general, there is no right to a court-appointed attorney in § 1983 cases. Jackson v. Cain, 864 F.2d 1235, 1242 (5th Cir. 1989); Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982). Mayes has been allowed to present his best case regarding his claims. His pleadings were liberally construed, and the defendants were ordered to respond to what was determined to be the only remaining nonfrivolous claim. (See Memorandum Opinion and Order entered on May 22, 2006, Docket Entry No. 31.) The issues are relatively simple, and Mayes has had a fair opportunity to challenge the arguments presented in the defendants' motion for summary judgment. See Cupit v. Jones, 835 F.2d 82, 86 (5th Cir. 1987). Therefore, the motion (Docket Entry No. 28) will be denied and no counsel shall be appointed. See Wendell v. Asher, 162 F.3d 887, 892 (5th Cir. 1998).

Mayes has filed a motion (Docket Entry No. 43) entitled "Plaintiff's Motion to Reply on the Defendant's [sic] defense [sic]." Although the title implies that Mayes seeks permission to file a response, the substance of the motion is a request that the

court deny defendants' qualified immunity. Id. at 3. Therefore, the court shall rule accordingly. See Gates v. Spinks, 771 F.2d 916, 917 n.1 (5th Cir. 1985).

The burden is on the plaintiff to show that the defendants, who are government officials, are not entitled to qualified immunity. Sorenson v. Ferrie, 134 F.3d 325 (5th Cir. 1998). To accomplish this Mayes must show that the defendants' acts were objectively unreasonable. Id. The court has reviewed the evidence and the arguments presented by the parties and has determined that Mayes has failed to carry his burden and that defendants are entitled to qualified immunity. Therefore, the motion (Docket Entry No. 43) will be denied. See Beck v. Texas State Bd. of Dental Examiners, 204 F.3d 629, 633-34 (5th Cir. 2000).

Mayes has filed motions for discovery (Docket Entry Nos. 53 and 59) in which he seeks the complete offense report prepared by his defense attorney and the accident reports prepared by the defendants. He specifically demands all pictures of all cars involved in the incident and any reports made by a body shop on the damage to the Mustang. (See Docket Entry No. 53 at 2.) Mayes contends that the defendants did not prepare any reports as required by law. (See Docket Entry No. 59 at 1.)

As noted above, the court has concluded that defendants are entitled to qualified immunity. One of the purposes of granting qualified immunity to government officials in civil rights actions

is to prevent disruptive discovery. Schultea v. Wood, 47 F.3d 1427, 1436 (5th Cir. 1994) (concurring opinion). This court has reviewed the records submitted by Mayes and the defendants and has found that there is no evidence even suggesting that the complained of conduct was willful. The motions will be denied.

## VI. Conclusion and Order

The court **ORDERS** the following:

1. Defendants' Motion for Summary Judgment (Docket Entry No. 49) is **GRANTED.**

2. This action is **DISMISSED with prejudice.**

3. All other motions (Docket Entry Nos. 28, 43, 53, and 59) are **DENIED.**

**SIGNED** at Houston, Texas, on this 15th day of February, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE